**HARALSON, MILLER, PITT,
FELDMAN & McANALLY, P.L.C.**
José de Jesus Rivera, SBN 4606
jrivera@hmpmlaw.com
Peter T. Limperis, SBN 19175
plimperis@hmpmlaw.com
2800 N. Central Avenue, Ste. 840
Phoenix, AZ 85012
Phone: (602) 266-5557   Fax: (602) 266-2223

*Attorneys for Defendant City of Glendale*

Thomas C. Horne, Attorney General, SBN 14000
Michael Tryon, SBN 3109
Michael.Tryon@azag.gov
Evan Hiller, SBN 28214
Evan.Hiller@azag.gov
1275 West Washington Street
Phoenix, AZ 85007-2926
Phone: (602) 542-8355   Fax: (602) 364-2214

*Attorneys for Defendant State of Arizona*

*Counsel Continued On Following Pages*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| THE TOHONO O'ODHAM NATION,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF GLENDALE and THE STATE OF ARIZONA,<br><br>Defendants. | Case No. 2:11-cv-279-NVW<br><br>**DEFENDANTS' JOINT STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

**HOGAN LOVELLS US LLP**
Audrey E. Moog*
audrey.moog@hoganlovells.com
Dominic F. Perella*
dominic.perella@hoganlovells.com
555 Thirteenth Street, NW
Washington, DC 20004
Phone: (202) 637-5600   Fax: (202) 637-5910

**CITY OF GLENDALE**
**OFFICE OF THE CITY ATTORNEY**
Craig D. Tindall, SBN 14071
ctindall@glendaleaz.com
5850 West Glendale Ave., Suite 450
Glendale, AZ 85301
Phone: (623) 930-2930
Fax: (623) 915-2391

*Attorneys for Defendant City of Glendale*

# DEFENDANTS' JOINT STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule of Civil Procedure 56.1, Defendants the State of Arizona and the City of Glendale set forth the material facts not subject to genuine dispute in support of their cross motion for summary judgment. Although the issues in this proceeding—involving the validity of H.B. 2534—are predominantly legal in nature, H.B. 2534 was inspired, in large part, by the actions of the Tohono O'odham Nation ("Nation"). The Nation's effort to convert an unincorporated area within the City of Glendale's borders into reservation land housing the state's largest casino educated the Arizona state legislature on the risks and harms that arise whenever a landowner seeks to transfer to the federal government lands within and adjoining municipalities in populous counties. The paragraphs below state the facts that informed and motivated the Arizona legislature's enactment of H.B. 2534 and the facts concerning the bill's enactment.

### A. Glendale's Annexations and Authority

1. The City of Glendale presently includes approximately 59 square miles of incorporated territory, with the city limits enclosing an area of approximately 100 square miles. Def. Mot., Ex. 1 (Decl. of Ed Beasley ("Beasley Decl.")) ¶ 8.[1]

2. Glendale has adopted a Municipal Planning Area that covers the 100 square miles enclosed by the city limits. Id. ¶ 11; Def. Mot., Ex. 2 at AR2629. Glendale's General Plan adopts land-use policies and guides development throughout

---

[1] The declarations cited herein originally were submitted in the related action, Gila River Indian Community v. United States, No. Civ. 2:10-cv-01993-DGC.

1

that 100-square-mile area. Def. Mot., Ex. 2 at AR2626-AR2638; Ariz. Rev. Stat. § 11-831; Def. Mot., Ex. 1 (Decl. of Ed Beasley ("Beasley Decl.")) ¶ 11.

**B.    The Nation's Acreage and Surrounding Development**

3.     The Nation holds fee title to approximately 135 acres of land—including Parcel 2, the 53.54 acre parcel that the Nation seeks to use for a casino—on land fully enclosed by lands previously incorporated by Glendale, as depicted on Exhibit A of the Beasley Declaration. Def. Mot., Ex. 1 (Beasley Decl.) at Ex. A; Compl. ¶ 24; Nation Mot. for Summ. J. ("Pl. Mot."), Ex. 4 at 1-2.

4.     The Nation's 135 acres have been surrounded by and within the City of Glendale since 1977, when, pursuant to Ordinance No. 986, the City annexed a large area to the west of the historic city center. Def. Mot., Ex. 1 (Beasley Decl.) ¶ 9 & Ex. B. One portion of the Nation's acreage subsequently was annexed by the City in 2001, as recognized in Ordinance No. 2688. Def. Mot., Ex. 2 at AR396-97; Def. Mot., Ex. 1 (Beasley Decl.) ¶ 15.

5.     While Parcel 2 and the eastern swath of the 135 acres remain unincorporated, Glendale has long included all of the Nation's acreage in city planning and exercised land-use planning authority over it. Def. Mot., Ex. 1 (Beasley Decl.) ¶ 10-11; Def. Mot., Ex. 2 at AR2629, AR2635.

6.     Parcel 2 currently is zoned R-43, a rural designation that would allow for only very limited development. Def. Mot., Ex. 2 at AR112. As Maricopa County's Zoning Ordinances explain,

> The principal purpose of this zoning district is to conserve and protect farms and other open land uses, foster orderly growth in rural and agricultural areas, and prevent urban and agricultural land use conflicts; but when governmental facilities and services, public

>utilities and street access are available, or can reasonably be made available, applications for change of this zoning district to any single-family residential zoning district will be given favorable consideration.

Maricopa County Zoning Ordinance § 503.1, <u>available at</u> http://www.maricopa.gov/planning/Resources/Ordinances/ZoningOrdinance.aspx.

7. In reliance on this zoning and the City's land-use control, significant public and private resources have been expended to develop the area around the Nation's acreage over recent years. Def. Mot., Ex. 1 (Beasley Decl.) ¶ 18.

8. Since 2003, city, state, and private interests have invested in a $450 million stadium, a $240 million arena, and a $120 million Major League Baseball spring training facility in western Glendale to establish, develop, and support the City's Sports and Entertainment District, which abuts the Nation's acreage to the south. <u>Id.</u>

9. All this investment and development was planned in accordance with Glendale's General Plan and was designed to attract visitors to Glendale establishments for dining, sports, and other entertainment. <u>Id.</u>

10. At the same time, the Peoria Unified School District, a school district that serves Glendale residents, finished building a new public high school directly across the street from the Nation's acreage in 2005. <u>Id.</u> ¶ 20.

11. As investment in the area's infrastructure has grown, the population has boomed: More than 30,000 people now live within two miles of the Nation's proposed reservation and casino. Def. Mot., Ex. 1 (Beasley Decl.) ¶ 19. Approximately one-third of these residents are under 20 years old. <u>Id.</u>

12. A multi-family development borders the Nation's parcel, and hundreds of new single-family homes have been developed within a half-mile of the application site

3

over the last five years. Def. Mot., Ex. 2 at AR379; Def. Mot., Ex. 1 (Beasley Decl.) ¶ 19.

13. Glendale residents have said they chose to buy property and educate their children there because the area is "family friendly." Def. Mot., Ex. 2 at AR3433; Def. Mot., Ex. 3 (Declaration of Michael N. Socaciu ("Socaciu Decl.")) ¶¶ 2, 8, 10. Michael Socaciu, a Glendale resident who is a plaintiff in the related case, Civ. No. 2:10-cv-01993-DGC, has indicated that he and his family "will consider selling [their] home and moving away from Glendale if the casino is built as planned." Def. Mot., Ex. 3 (Socaciu Decl.) ¶¶ 8, 10.

**C.    The Nation's Plan for a Glendale Casino**

14. The Nation, formerly known as the Papago Tribe, is a federally recognized Indian tribe with "the second largest Tribal land base in the U.S., 2.8 million acres," and over 28,000 Tribal members. January 2009 Letter of the Tohono O'odham Nation at 1, available at http://www.tonation-nsn.gov/west_valley_resort.aspx; see also Compl. ¶ 15.

15. In August 2003, the Nation purchased approximately 135 acres, including Parcel 2, in western Glendale with plans to use the land for a casino. No. Civ. 2:10-cv-01993-DGC, Docket No. 78 (Nation Answer to Glendale Am. Compl.) ¶¶ 51-52.

16. The Nation kept its purchase quiet by organizing a shell company called "Rainier Resources, Inc." and by having Rainier buy the parcel. Def. Mot., Ex. 2 at AR2610, AR2612-13; No. Civ. 2:10-cv-01993-DGC, Docket No. 78 (Nation Answer to Glendale Am. Compl.) ¶¶ 51-53.

17. For nearly six years—during a period of substantial residential and commercial development for western Glendale—the Nation kept its ownership of the acreage and its plan to create a reservation and casino there a secret. No. Civ. 2:10-cv-01993-DGC, Docket No. 78 (Nation Answer to Glendale Am. Compl.) ¶¶ 51-53. On January 20, 2009, the Nation transferred ownership of Parcel 2 from Rainier Resources, Inc. to itself in fee simple. Id. ¶ 53.

18. The Nation finally revealed its intent on January 28, 2009, when tribal representatives met with Glendale Mayor Elaine Scruggs and told her about their plan to build a casino in the midst of Glendale's neighborhoods. Def. Mot., Ex. 2 at AR2324-25. At the same time, the Nation filed its application with the Department of the Interior requesting that the Secretary take the property into trust pursuant to the Gila Bend Act, Pub. L. No. 99-503, 100 Stat. 1798 (1986). Def. Mot., Ex. 2 at AR4286-89.

19. The Nation has since released advertising materials proclaiming that its "new casino will be the largest in the state." Id. at AR2654. It will include "150,000 square feet designated for a gaming floor" with "over 1,000 slot machines . . . as well as 50 table games, 25 poker tables, and a bingo hall large enough to seat a thousand guests." Id. The $600 million complex also will include—among many other things—two bars, a nightclub and "parking for over 4,000 vehicles." Id.

**D.   Impacts of the Nation's Plan for a Glendale Casino**

20. Glendale's opposition to the Nation's plan is based on the many ways the creation of a reservation and casino within Glendale will harm the City.

21. First, if some or all of the Nation's acreage is placed in trust, Glendale will be stripped of its long-standing authority to annex the land and will lose its present

control over land use on the acreage—a substantial harm, considering that Glendale has carefully developed the area around Parcel 2, and orchestrated infrastructure build out, to match the development it had mapped out.  Def. Mot., Ex. 1 (Beasley Decl.) ¶¶ 10-11, 22; Def. Mot., Ex. 3  (Socaciu Decl.) ¶ 9; Def. Mot., Ex. 2 at AR2626-38.

22.     These injuries are exacerbated by the casino development the Nation has planned and publicized.  City officials have estimated that the Nation's casino complex would require Glendale to build a new fire station at a cost of more than $14.6 million.  Def. Mot., Ex. 2 at AR2659; Def. Mot., Ex. 1 (Beasley Decl.) ¶ 25.  It would require some $3.75 million in ongoing annual fire and other public safety expenditures.  Def. Mot., Ex. 2 at AR2660; Def. Mot., Ex. 1 (Beasley Decl.) ¶ 25.  It would force the City to rebuild roads and otherwise expand its transportation infrastructure to handle an estimated 8.34 million additional annual car trips.  Id.; Def. Mot., Ex. 2 at AR1887.  In the meantime, the additional traffic imposed by the proposed casino will make traveling through the area slower and more burdensome for residents and visitors alike.  See, e.g., Def. Mot., Ex. 4 (Declaration of Gary Hirsch ("Hirsch Decl.") ¶ 7; Def. Mot., Ex. 3 (Socaciu Decl.) ¶ 7.  By way of example, access to Loop 101, a major local highway, is located approximately 1,000 feet west of the proposed casino site.  Def. Mot., Ex. 4 (Hirsch Decl.) ¶ 7.

23.     The City could recoup none of the costs of expanding its infrastructure through the usual methods—development and permitting fees—because the Nation's property would be a reservation, immune from such costs.  See Def. Mot., Ex. 2 at AR1887, AR2328-29, AR2660-61.  On top of these direct costs, Glendale will be burdened twice-over when the Nation's casino complex siphons business from

Glendale's tax-paying establishments, decreasing the revenues that allow the City to fund public services and infrastructure. Def. Mot., Ex. 2 at AR2658-59.

24. The City and State will be unable to tax the casino. Indeed, the Nation boasts that its Desert Diamond Casino Hotel (one of the Nation's three existing casinos) "is a **tax-free** establishment." See http://www.desertdiamondhotel.com (emphasis in original). "You save over 12.5% just by staying with us!" the Nation proclaims. Id.

25. Competing non-tribal businesses will lose business if the casino is built, some will go out of business, and others will relocate their businesses to more distant locations. See Def. Mot., Ex. 1 (Beasley Decl.) ¶ 24; Def. Mot., Ex. 2 at AR2658-59.

26. All of that will injure Glendale, which will have less revenue to support greater casino-imposed needs. Def. Mot., Ex. 2 at AR2656-61.

27. The Nation's proposal also would have adverse social consequences for Glendale. The proposed gaming complex would operate within a quarter-mile of established churches, schools, and neighborhoods with almost 34,000 residents. Def. Mot., Ex. 2 at AR1886-87; Def. Mot., Ex. 1 (Beasley Decl.) ¶ 23. As one longtime Glendale resident explained,

> When my family needed a larger home 10 years ago, we chose to build it in Glendale because we liked the community's family-friendly feel. I recognized that development would continue in the city, but I counted on the fact that, as a resident, I would have some voice in how that development occurred and what was acceptable to the community. That active role in shaping the community is important to me. I feel like the reservation process has taken that role away from me and allowed the Tohono—and the federal government—to decide what my community will look like in the future.

Def. Mot., Ex. 3 (Socaciu Decl.) ¶ 8.

28.     The State will suffer injury by the loss of sovereign control over any of the Nation's acreage that is taken into trust.  Def. Mot., Ex. 6 (H.R. 2001 & S.R 1001). And it also will be injured as its residents and communities suffer the aforementioned injuries.  See id.

**E.    Department of Interior's Decision Regarding Parcel 2**

29.     On July 23, 2010, the Department of Interior issued its Parcel 2 Decision, stating that Parcel 2 is eligible to be taken into trust under the provisions of the Gila Bend Act.  Pl. Mot., Ex. 4.

30.     Shortly afterward, Glendale, the Gila River Indian Community, and various individuals filed lawsuits against the Department of Interior in the U.S. District Court for the District of Arizona, challenging the Parcel 2 Decision as a violation of the Administrative Procedure Act and the U.S. Constitution.  See Docket for No. Civ. 2:10-cv-01993-DGC.  The Nation subsequently intervened as a defendant, and the State of Arizona and various state legislators intervened as plaintiffs.  Id.

31.     The lawsuits were consolidated into one proceeding, No. Civ. 2:10-cv-01993-DGC.  On March 3, 2010, the Court issued an order ("March 3 Order"), denying the plaintiffs' motions for summary judgment and granting the cross-motions for summary judgment filed by the Nation and the Department of Interior.  See No. Civ. 2:10-cv-01993-DGC, Dkt. No. 133.  The plaintiffs in that proceeding have appealed the March 3 Order.  See No. Civ. 2:10-cv-01993-DGC, Dkt. Nos. 136-40, 142.

**F.    H.B. 2534**

32.     With members of the leadership having intervened as plaintiffs in the lawsuit challenging the federal government's Parcel 2 Decision, the Arizona legislature

was well aware of the injuries Glendale was facing from the Nation's desire to exercise sovereign control over its Glendale property. See, e.g., No. Civ. 2:10-cv-01993-DGC, Dkt. Nos. 48 (Arizona State Legislators' Mot. for Leave to Intervene), 84 (Arizona Legislative Leaders' Mot. for Summary Judgment). In January 2010, the Arizona legislature passed H.B. 2534 to provide municipalities in populous counties with a measure of protection from the injuries that flow from property transfers to federal and tribal governments—transfers that displace local and state control in part or in whole. See Pl. Mot., Ex. 6.

33. H.B. 2534 provides, in pertinent part, as follows:

> 1. A city or town located in a county with a population of more than three hundred fifty thousand persons may annex any territory within an area that is surrounded by the city or town or that is bordered by the city or town on at least three sides if the landowner has submitted a request to the federal government to take ownership of the territory or hold the territory in trust.
>
> 2. The annexation of territory pursuant to this section is valid if approved by a majority vote of the governing body of the city or town. The annexation becomes immediately operative if it is approved by at least two-thirds of the governing body of the city or town.

Pl. Mot., Ex. 1 (H.B. 2534).

34. Governor Brewer signed the legislation on February 1, 2011, Compl. ¶ 35, explaining that, "[t]his legislation assures that local officials will continue to have a say in local development matters that affect their community." Pl. Mot., Ex. 10.

35. H.B. 2534 is expected to take effect 90 days after the close of the Arizona legislature's current session. See Ariz. Const. art. IV., pt. 1, § 1(3).

9

| | |
|---|---|
| | Respectfully submitted, |
| Dated: April 18, 2011 | By: s/ José de Jesus Rivera |
| | HARALSON, MILLER, PITT, FELDMAN & MCANALLY, P.L.C. |
| | José de Jesus Rivera, SBN 4606 |
| | jrivera@hmpmlaw.com |
| | Peter T. Limperis, SBN 19175 |
| | plimperis@hmpmlaw.com |
| | 2800 N. Central Avenue, Ste. 840 |
| | Phoenix, AZ 85012 |
| | Phone:  (602) 266-5557 |
| | Fax:  (602) 266-2223 |
| | |
| | HOGAN LOVELLS US LLP |
| | Audrey E. Moog* |
| | audrey.moog@hoganlovells.com |
| | Dominic F. Perella* |
| | dominic.perella@hoganlovells.com |
| | 555 Thirteenth Street, NW |
| | Washington, DC 20004 |
| | Phone: (202) 637-5600 |
| | Fax:  (202) 637-5910 |
| | |
| | CITY OF GLENDALE OFFICE OF THE CITY ATTORNEY |
| | Craig D. Tindall, SBN 14071 |
| | ctindall@glendaleaz.com |
| | 5850 West Glendale Ave., Suite 450 |
| | Glendale, AZ 85301 |
| | Phone:  (623) 930-2930 |
| | Fax:  (623) 915-2391 |
| | |
| | Attorneys for Defendant City of Glendale, |
| | |
| | * admitted *pro hac vice* |

| | |
|---|---|
| 1 | By: s/ Michael Tyron |
| 2 | |
| 3 | Thomas C. Horne, Attorney General, SBN 14000 |
| 4 | Michael Tryon, SBN 3109<br>Michael.Tryon@azag.gov |
| 5 | Evan Hiller, SBN 28214<br>Evan.Hiller@azag.gov |
| 6 | 1275 West Washington Street<br>Phoenix, AZ 85007-2926 |
| 7 | Phone: (602) 542-8355   Fax: (602) 364-2214 |
| 8 | |
| 9 | *Attorneys for Defendant State of Arizona* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of April, 2011, a copy of the forgoing Defendants' Joint Statement of Undisputed Facts in Support of their Motion for Summary Judgment was served on counsel of record through the Court's electronic filing system.

                         s/Jennie Larsen
                         Jennie Larsen